THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CAREBOURN CAPITAL, L.P., a Delaware limited partnership; and MORE CAPITAL LLC, a Minnesota limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STANDARD REGISTRAR & TRANSFER CO., INC., a Utah Corporation; DARKPULSE, INC., a Delaware corporation; AMY MERRILL; DENNIS O'LEARY; THOMAS SEIFERT; CARL ECKEL; ANTHONY BROWN; and FAISAL FAROOQUI,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>• **GRANTING IN PART AND DENYING IN PART [25] MOTION TO DISMISS UNDER RULES 12(b)(1), 9(b), AND 12(b)(6), OR, ALTERNATIVELY, TO STAY PROCEEDINGS**<br>• **DENYING WITHOUT PREJUDICE [33] MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, TO STAY THE ACTION**<br>• **DENYING WITHOUT PREJUDICE [35] MOTION FOR SANCTIONS**<br><br>Case No. 2:22-cv-00346-DBB<br><br>District Judge David Barlow |

Before the court are two motions to dismiss Plaintiffs Carebourn Capital, L.P. ("Carebourn") and More Capital LLC's ("More") (collectively "Plaintiffs") Complaint,[1] and a motion for sanctions. Defendants Standard Registrar & Transfer Co., Inc. ("Standard") and Amy Merrill ("Ms. Merrill") (collectively "Standard Defendants") move for dismissal or a stay.[2] Defendants DarkPulse, Inc. ("DarkPulse"),[3] Dennis O'Leary ("Mr. O'Leary"), Thomas Seifert, Carl Eckel, Anthony Brown, and Faisal Farooqui (collectively "DarkPulse Defendants") likewise

---

[1] Compl., ECF No. 2, filed May 20, 2022.
[2] Mot. to Dismiss or, Alternatively, to Stay Proceedings ("Standard Defs. MTD"), ECF No. 25, filed July 5, 2022.
[3] DarkPulse was formerly Klever Marketing, Inc. *See* Compl. ¶ 3.

1

move for dismissal or a stay.[4] DarkPulse Defendants also seek sanctions.[5] After having fully considered the briefing and relevant law, the court finds that oral argument would not materially assist the court's decision.[6] For the reasons stated below, the court grants in part and denies in part Standard Defendants' motion to dismiss or stay, and denies without prejudice DarkPulse Defendants' motion to dismiss or stay and their motion for sanctions.

## BACKGROUND[7]

Plaintiffs loan cash to small-and-medium-sized businesses.[8] Borrowers can repay the loan in cash or shares.[9] As part of the loan agreement, borrowers assign convertible promissory notes to Plaintiffs.[10] Accordingly, Plaintiffs can convert any outstanding debt on the notes into shares of the borrower's common stock if the loan is not repaid by the notes' maturity date.[11]

DarkPulse is one such borrower. Plaintiffs and DarkPulse entered into three separate loan agreements. In July 2018, Carebourn loaned DarkPulse $465,750 in two distinct transactions.[12] In turn, Carebourn received two promissory notes. The notes gave Carebourn the right to convert outstanding debt into common shares of DarkPulse stock if the debt and interest was not fully

---

[4] DarkPulse Defs. Mot. to Dismiss, or, in the Alternative, to Stay the Action ("DarkPulse Defs. MTD"), ECF No. 33, filed Nov. 23, 2022.
[5] ECF No. 35.
[6] *See* DUCivR 7-1(g).
[7] "In reviewing the complaint, we accept all facts pleaded by the nonmoving party as true and grant all reasonable inferences from the pleadings in favor of the same, but we do not accept the nonmoving party's legal conclusions as true." *Wyoming v. U.S. Dep't of Interior*, 839 F.3d 938, 942 (10th Cir. 2016) (cleaned up).
[8] Compl. ¶¶ 8, 9, 23.
[9] *Id.* ¶ 23.
[10] *Id.* ¶ 25.
[11] *Id.*
[12] *Id.* ¶ 26.

repaid within one year.[13] The next month, More entered into a nearly identical agreement with DarkPulse for a $152,000 loan.[14]

Standard was the assigned transfer agent.[15] DarkPulse informed Standard that "Plaintiffs' right to convert the note in a timely manner was a material obligation of Darkpulse's transactions with the Plaintiffs."[16] In all three agreements, Standard agreed "to reserve a sufficient number of shares of Darkpulse's common stock for issuance upon full conversion of the note[s,]"[17] and "to issue shares of Darkpulse's common stock to More and Carebourn 'without any further action or confirmation' by Darkpulse upon receiving a notice of conversion from More or Carebourn."[18] "If there were insufficient reserve shares to accommodate a notice of conversion, Standard agreed to accommodate the conversion notice by transferring the authorized, unissued shares that Darkpulse had available at the time of the conversion."[19] The agreements indemnified Standard and its officers for all actions related to transfer duties.[20] They also specified that Plaintiffs were third-party beneficiaries of the transfer agreements.[21]

On February 24, 2020, Mr. O'Leary, DarkPulse's CEO,[22] established a corporate reserve account and directed Standard to transfer 17 billion shares of common stock into that account.[23] Any transfer of shares from the account would require DarkPulse's officers' express

---

[13] *Id.*
[14] *Id.* ¶ 27.
[15] *Id.* ¶ 35.
[16] *Id.* ¶ 39.
[17] *Id.* ¶ 37(a).
[18] *Id.* ¶ 37(b) (citation omitted).
[19] *Id.* ¶ 38.
[20] *See id.* ¶ 45.
[21] *Id.* ¶ 40.
[22] *Id.* ¶ 41.
[23] *Id.* ¶ 42.

permission.[24] Before creating the account, Standard asked DarkPulse for an indemnification notice.[25] DarkPulse Defendants did not disclose to Plaintiffs the existence of the corporate reserve account.[26]

Between January 2019 and September 2020, Carebourn and More collectively submitted seventeen notices of conversion.[27] DarkPulse honored the notices.[28] In November 2020 and January 2021, they refused to honor Plaintiffs' notices.[29] DarkPulse instructed Standard to inform noteholders that "there are no shares available to allocate for your [Darkpulse] share reserve[.]"[30] However, as of May 2022, DarkPulse had over 14 billion shares in its corporate reserve account according to public filings.[31] Since denying Plaintiffs' notices, DarkPulse issued more than 3 billion shares to other noteholders.[32] Between November 2020 and May 2022, DarkPulse's stock declined from 20 cents per share to less than 3 cents per share.[33]

On January 29, 2021, Carebourn sued DarkPulse in Minnesota state court for DarkPulse's failure to repay the promissory notes in full with common stock.[34] Carebourn amended its complaint to add Standard as a defendant.[35] On June 29, 2021, More sued DarkPulse and Standard in the same court on similar grounds.[36] After having consolidated the two actions, the

---

[24] *Id.*
[25] *Id.* ¶ 45.
[26] *Id.* ¶ 42.
[27] *See id.* ¶¶ 29–30.
[28] *Id.* ¶ 30.
[29] *Id.* ¶ 31.
[30] *Id.* ¶ 46.
[31] *Id.*
[32] *Id.* ¶ 52.
[33] *Id.* ¶ 31.
[34] *See* Compl., *Carebourn Cap., L.P. v. DarkPulse, Inc.*, No. 27-cv-21-1173, 2021 WL 6066952 (Minn. Dist. Ct. filed Jan. 29, 2021).
[35] *See* Am. Compl., *Carebourn Cap., L.P. v. DarkPulse, Inc.*, No. 27-cv-21-1173, 2021 WL 6066956 (Minn. Dist. Ct. filed Apr. 14, 2021).
[36] *See* Compl., *More Cap., LLC v. DarkPulse, Inc.*, No. 27-cv-21-8111, 2021 WL 6284463 (Minn. Dist. Ct. filed June 29, 2021).

court granted Standard's motion to dismiss on December 6, 2021.[37] The court found that the plaintiffs had not met their burden to show that the court had personal jurisdiction over Standard.[38] On September 24, 2021, the Securities and Exchange Commission ("SEC") brought an enforcement action against Carebourn in the United States District Court for the District of Minnesota.[39] The SEC alleged that Carebourn's practice of buying and selling "penny stocks"[40] violated federal securities laws.[41] Specifically, it alleged that Carebourn acted as an unregistered securities dealer when it bought more than 100 convertible promissory notes from 40 different companies and sold the converted shares of stock.[42] The SEC sought injunctive relief, disgorgement of ill-gotten gains, civil penalties, and a bar to dealing in penny stock.[43]

Carebourn and More filed their Complaint in this court on May 20, 2022. They raised one federal claim and eleven state claims: Civil RICO under 18 U.S.C. § 1962; Declaratory Judgment; Breach of Contract to Third-Party Beneficiary; Attorneys' Fees; Civil Conspiracy; Violation of Utah Code § 76-10-1605; Fraudulent Concealment; Violation of Utah Code § 70A-8-401; Tortious Interference with Economic Relations; Conversion; Breach of Fiduciary Duty; and Preliminary Injunction.[44]

---

[37] ECF No. 48-2, at 12, filed Jan. 17, 2023.
[38] *Id.* at 11.
[39] *See* Compl. ("SEC Compl."), *S.E.C. v. Carebourn Cap., L.P.*, No. 21-cv-2114, 2021 WL 4354249 (D. Minn. filed Sept. 24, 2021).
[40] Stock is considered a "penny stock" if it is traded at less than $5 per share. *Gernandt v. SandRidge Energy Inc.*, No. CIV-15-1001, 2017 WL 3219490, at *4 (W.D. Okla. July 28, 2017). "Penny stocks . . . are particularly susceptible to market manipulation due to the lack of liquidity in the market, minimal standard requirements for over-the-counter trading, paucity of publicly available information . . . , and the fact that many of these companies are either newly formed or approaching bankruptcy." *S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 404 (S.D.N.Y. 2014).
[41] SEC Compl. ¶ 1.
[42] *Id.* ¶¶ 2–4.
[43] *Id.* at 17–19.
[44] Compl. ¶¶ 53–136.

On July 5, 2022, Standard Defendants moved to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and, alternatively, moved for a stay.[45] Plaintiffs responded on August 2.[46] Standard Defendants filed a reply two weeks later.[47] On November 23, 2022, DarkPulse Defendants filed their motion to dismiss under Federal Rules of Civil Procedure 4(m), 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, moved for a stay.[48] Plaintiffs responded on January 4, 2023.[49] DarkPulse Defendants replied on January 17, 2023.[50] And on November 23, 2022, DarkPulse Defendants moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.[51] On January 4, 2023, Plaintiffs submitted a response.[52] DarkPulse Defendants replied on January 17, 2023.[53]

## DISCUSSION

Standard Defendants and DarkPulse Defendants raise several arguments as to why the court should dismiss or stay the action. The court first addresses whether a stay is proper.

"[A] district court has the power to stay proceedings pending before it and to control its docket for the purpose of 'economy of time and effort for itself, for counsel, and for litigants.'"[54]

---

[45] *See* Standard Defs. MTD.
[46] Mem. of Law in Opp'n ("Opp'n to Standard MTD"), ECF No. 26, filed Aug. 2, 2022.
[47] ECF No. 27.
[48] *See* DarkPulse Defs. MTD.
[49] ECF No. 45.
[50] ECF No. 49.
[51] *See* ECF No. 35, at 1.
[52] ECF No. 44.
[53] ECF No. 48.
[54] *Metric Const. Co. v. Pro. Raingutter Servs., Inc.*, No. 1:06-cv-00125, 2007 WL 4143084, at *2 (D. Utah Nov. 19, 2007) (quoting *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963)); *see Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

6

"[T]he court 'must weigh competing interests and maintain an even balance[.]'"[55] "[B]ecause 'the right to proceed in court should not be denied except under the most extreme circumstances,' the movant seeking a stay 'must make a strong showing of necessity[.]'"[56] "'[I]f even a fair possibility exists that the stay would damage another party,' the movant 'must demonstrate a clear case of hardship or inequity.'"[57] A court should consider "(1) whether the stay would promote judicial economy; (2) whether the stay would avoid confusion and inconsistent results; and (3) whether the stay would unduly prejudice the parties or create undue hardship."[58]

Standard Defendants contend that the court should stay the matter due to the SEC's enforcement action. DarkPulse Defendants contend that the court should grant a stay under *Colorado River* abstention. The court first discusses the argument as to the SEC action.

Standard Defendants argue that the SEC's enforcement action has "a direct bearing on this case."[59] Should Carebourn lose or consent to an injunction, convertible promissory notes such as the ones at issue here "would likely be illegal, unenforceable, and result in impossibility of performance."[60] They further contend a stay "will prevent duplication of judicial resources, legal resources and avoid the possibility of inconsistent rulings."[61] In response, Plaintiffs argue

---

[55] *Metric Const.*, 2007 WL 4143084, at *2 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see Feld Ent. v. A.S.P.C.A.*, 523 F. Supp. 2d 1, 3 (D.D.C. 2007) ("[T]he court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.").
[56] *Welsh v. Safeco Ins. Co. of Am.*, No. 2:21-cv-0082, 2022 WL 2065667, at *1 (D. Utah June 8, 2022) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).
[57] *Id.* (quoting *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).
[58] *Khan v. Merit Med. Sys., Inc.*, No. 2:21-cv-00337, 2021 WL 8269547, at *3 (D. Utah Oct. 25, 2021) (citation omitted).
[59] Standard MTD 26.
[60] *Id.*
[61] *Id.* (citing *Anderson v. Putnam*, No. 2:20-cv-00041, 2020 WL 8084060, at *2 (D. Utah Aug. 12, 2020) (citation omitted)).

that a stay is unwarranted because the SEC has not brought an action against More and the instant tort allegations are separate and distinct from the claims alleged in the SEC case.[62]

A stay would promote judicial economy and help avoid inconsistent results. The SEC enforcement action is not identical to the instant action, but there are significant parallels and intersections. Both cases involve Carebourn.[63] The two matters include the same type of transactions. As alleged by the SEC, Carebourn bought convertible notes from penny stock issuers and then converted those notes after six months or a year into common stock at a heavy discount.[64] Here, DarkPulse issued penny stock.[65] Plaintiffs bought promissory notes from DarkPulse that allowed them to convert outstanding debt into shares of common stock.[66] Mirroring Carebourn's common scheme as alleged by the SEC, here, Plaintiffs sought to convert the notes six months after acquisition.[67] Resolution of the SEC matter will help inform whether the basis for Plaintiffs' tort claims—purchasing promissory notes from penny stock issuers and seeking to convert debt into common stock—support their allegations. It is thus not dispositive that Plaintiffs' claims here are different from those alleged by the SEC in its case.[68]

Another reason for a stay is that the SEC action bears directly on this case. Should the SEC obtain its requested relief, Carebourn would be permanently enjoined from "directly or indirectly, engaging in the transactions, acts, practices or courses of business . . . , or in conduct

---

[62] Opp'n to Standard MTD 2.
[63] SEC Compl. ¶ 14.
[64] *Id.* ¶¶ 16, 32–34.
[65] *See* Compl. ¶ 31; Standard MTD 25.
[66] Compl. ¶¶ 26–27; 15 U.S.C. § 78o(a)(1).
[67] Compl. ¶ 29. Under SEC Rule 144, an individual dealing in securities may obtain a "safe harbor" from having to register as an underwriter if they meet certain conditions. *See* 17 C.F.R. § 230.144.
[68] *See Commodity Futures Trading*, 713 F.2d at 1483 ("[A] stay [i]s not limited to the . . . circumstances in which the same parties and issues are involved in separate actions in several courts." (citing *Landis*, 299 U.S. at 254)).

of similar purport and object, in violation of Section 15(a)(1) of the Exchange Act."[69] Carebourn would also have to disgorge "all ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest . . . as a result of the alleged violations[.]"[70] And Carebourn would be enjoined from "engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock[.]"[71] Even though the SEC has not initiated an action against More, a judgment against Carebourn may have an effect on whether More could plausibly allege facts supporting monetary or injunctive relief. After all, More allegedly engaged in virtually the same transaction as Carebourn.[72]

Last, a stay would not unduly prejudice the parties or create undue hardship. The SEC action would dictate the stay's length. In that case, the discovery period ended on January 27, 2023, the dispositive motion deadline is February 24, 2023, and the court directed the parties to be ready for trial by April 24, 2023.[73] Here, the parties have not yet submitted a proposed scheduling order.[74] Indeed, Plaintiffs offer no argument that a stay could lead to prejudice, hardship, harm, or inequity. On the contrary, a stay may simplify the issues before the court and thus limit the risk of unnecessary and inconsistent proceedings. Plus, "a stay will allow [Carebourn] to vigorously defend [itself] in the SEC [a]ction while conducting any pending or necessary [matters] in that forum."[75]

---

[69] SEC Compl. at 17–18; 15 U.S.C. § 78o(a)(1).
[70] SEC Compl. at 18.
[71] *Id.* at 18–19.
[72] *See* Compl. ¶¶ 27–30.
[73] *See* Docket, *S.E.C. v. Carebourn Cap., L.P.*, No. 21-cv-2114 (D. Minn. filed Sept. 24, 2021).
[74] *See* Docket, *Carebourn Cap., L.P. v. Standard Registrar & Transfer. Co.*, No. 2:22-cv-00346 (D. Utah filed May 20, 2022).
[75] *Anderson*, 2020 WL 8084060, at *2.

Overall, a stay will promote judicial economy, help avoid inconsistent results, and will not cause undue prejudice or hardship. For these reasons, the court need not reach the parties' arguments regarding a stay because of the pendency of the Minnesota state-court action. For the same reasons, it would be improvident for the court to address dismissal or sanctions at this time.

**ORDER**

Accordingly, the court GRANTS IN PART AND DENIES IN PART Standard Defendants' Motion to Dismiss.[76] The court GRANTS the motion as to the request for a stay. The court DENIES without prejudice the motion as to dismissal.[77] The court DENIES without prejudice DarkPulse Defendants' Motion to Dismiss for Failure to State a Claim.[78] The court DENIES without prejudice DarkPulse Defendants' Motion for Sanctions.[79] The action shall be STAYED pending the conclusion of *S.E.C. v. Carebourn Capital, L.P.*[80] or until further order of the court. Within twenty-eight (28) days after the SEC action resolves, the parties shall submit a status report and file a motion to lift the stay. Concurrent with the motion to lift the stay, the parties shall file a proposed schedule for resolution of claims remaining in this case with an attorneys' planning meeting report and a proposed scheduling order.[81] The parties may refile the motions dismissed herein without prejudice once the court lifts the stay.

---

[76] ECF No. 25.
[77] ECF No. 25; ECF No. 33.
[78] ECF No. 33.
[79] ECF No. 35.
[80] No. 27-cv-21-1173 (Minn. Dist. Ct. filed Jan. 29, 2021).
[81] *See* ECF No. 11.

Signed February 10, 2023.

BY THE COURT

_____
David Barlow
United States District Judge