IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAREBOURN CAPITAL, L.P., and MORE CAPITAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DARKPULSE, INC., DENNIS O'LEARY, THOMAS SEIFERT, CARL ECKEL, ANTHONY BROWN, and FAISAL FAROOQUI,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER REGARDING AMOUNT OF FEES AND COSTS AWARDED IN CONNECTION WITH THE DARKPULSE DEFENDANTS' MOTION FOR SANCTIONS<br><br>Case No. 2:22-cv-00346-DBB-CMR<br><br>District Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) (ECF 53). Previously, the court granted in part and denied in part a motion for sanctions filed by Defendants DarkPulse, Inc., Dennis O'Leary, Thomas Seifert, Carl Eckel, Anthony Brown, and Faisal Farooqui's (collectively, DarkPulse Defendants) (ECF 76). Following that ruling, counsel for the DarkPulse Defendants filed their requests for fees. The first request comes from Eric J. Benzenberg (Mr. Benzenberg), an attorney admitted to practice *pro hac vice* in this matter (ECF 77). The second request comes from Brian Higley (Mr. Higley), an attorney admitted to practice before this court, who appeared as Utah counsel for the DarkPulse Defendants (ECF 78). The court also considered Plaintiffs Carebourn Capital and More Capital's (collectively, Plaintiffs) response to the fee requests (ECF 79), Mr. Benzenberg's reply (ECF 80-1), and Plaintiffs' sur-reply (ECF 83). Having considered the relevant filings, and for the reasons herein, the court hereby GRANTS IN PART and DENIES IN PART Mr. Benzenberg's request for fees and costs (ECF 77) and GRANTS Mr. Higley's request for fees (ECF 78).

## I. BACKGROUND

On September 10, 2024, the court issued its Memorandum Decision (ECF 76), granting in part and denying in part the DarkPulse Defendants' Motion for Sanctions (ECF 62). The court found it appropriate to grant the request against Plaintiffs and only their *pro hac vice* counsel, Lee Hutton (Mr. Hutton) (ECF 76 at 11–12). However, the court did not find it appropriate to award the request for full fees and costs given the attempts of Plaintiffs to dismiss this matter (*id.*). Thus, the court instructed the DarkPulse Defendants "to file an affidavit evidencing their fees and costs for bringing only their initial Motion to Dismiss (ECF 33), [the Motion for Sanctions], and any corresponding work on these two motions" (*id.* at 12).

In response to the court's instructions, Mr. Benzenberg filed a declaration indicating that he and other members of his firm, the Basile Law Firm (Basile Law), were lead counsel for the DarkPulse Defendants and the "aggregate amount of attorney's fees, costs and expenses incurred from the Motion to Dismiss and Motion for Sanctions are equal to $124,961.00" (ECF 77 at 15). Mr. Benzenberg submits that seven individuals from Basile Law, which is based in New York, performed legal work regarding the two motions, including himself (*id.* at 2–4). First, the declaration and Exhibit A indicate that Mr. Benzenberg worked approximately 73.26 hours with an hourly rate ranging from $700 to $1,000 (ECF 77; ECF 77-1).[1] Second, Waleed Amer (Mr. Amer), a senior associate with the firm, worked 5.30 hours with an hourly rate of $500 (*id.*). Next is Christopher Basile (Mr. Basile) and Jacques Lerner (Mr. Lerner), both associates with the firm, with Mr. Basile performing 5.80 hours of work with an hourly rate of $300, and Mr. Lerner

---

[1] The court notes that the declaration does not provide much information as far as the experience and expertise of each attorney. The information provided includes the year the attorney graduated from law school, the name of the school they attended, and the jurisdictions in which they have been admitted to practice (ECF 77 at 2–4). From this information, it does not appear that experience is tied to the hourly rates of each attorney, as Mr. Benzenberg and Mr. Amer apparently both graduated from New York Law School in 2017, yet Mr. Amer's hourly rate is $500, and Mr. Benzenberg's rate is between $700 and $1,000.

2

performing 77.70 hours of work with an hourly rate of $700 (*id.*). Then there are Delia Thornton (Ms. Thornton) and Joseph Rose (Mr. Rose), both of whom began at the firm as law clerks and transitioned to associate attorneys during the pendency of this case. Ms. Thornton performed 22.80 hours of work for an hourly rate of $300,[2] and Mr. Rose worked for 14 hours with an hourly rate ranging from $150 to $400[3] (*id.*). Finally, Eva Thompson (Ms. Thompson), a law clerk with the firm, performed 3.75 hours of work with an hourly rate of $200 (*id.*). In addition to attorney's fees, Mr. Benzenberg also represents that Basile Law incurred $250 in costs for the *pro hac vice* admission of Mr. Benzenberg in this court (ECF 77 at 15).

Mr. Higley, from the firm Business Legal Advisors, LLC, also filed a declaration, stating that he agreed to serve as Utah counsel in this matter for the DarkPulse Defendants for a "flat-rate, one-time fee of $5,000.00" (ECF 78 at 2).

Plaintiffs oppose granting Mr. Benzenberg's full request for fees on several grounds, claiming that the "supporting documents reflect significant overstaffing, vague (and in many cases non-existent) descriptions of legal services provided, and billings for unnecessary legal services and other non-compensable activities" (ECF 79 at 1–2).

## II.    LEGAL STANDARDS

The court considers four factors when imposing attorney's fees as a sanction under Rule 11: "(1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) 'other factors' as the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of

---

[2] Even though Ms. Thornton performed work as a law clerk and an associate in this matter, her hourly rate of $300 remained constant (ECF 77-1).

[3] While Mr. Rose was a law clerk, his hourly rate was $150; however, after becoming an associate attorney in May 2023, his rate increased to $300 per hour and further increased in September 2024 to $400 per hour (ECF 77-1).

3

chilling zealous advocacy." *King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir. 1990)).

The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986). "The party opposing the fee award has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants fair notice, the reasonableness of the requested fee." *Flying J Inc. v. Comdata Network, Inc.*, No. CIV. 1:96-cv-066-BSJ, 2007 WL 3550342, at *11 (D. Utah Nov. 15, 2007). "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

### III. DISCUSSION

Mr. Benzenberg indicates that the total amount of attorneys' fees that the DarkPulse Defendants incurred from Basile Law in connection with the Motion to Dismiss and Motion for Sanctions is $124,961.00 (ECF 77 at 10). Moreover, Mr. Higley affirms that he charged a flat fee of $5,000 for his representation of the DarkPulse Defendants in this matter (ECF 78). Below, the court addresses the reasonableness of the proposed fees, the minimum amount required to deter misconduct, the offender's ability to pay, and other relevant factors. *See King*, 899 F.3d at 1155.

#### A. Reasonableness of Basile Law's Proposed Fees

Through their declarations and affidavits, counsel for the parties have primarily focused on "the reasonableness of the proposed fees." "To determine the reasonableness of a fee request, the court begins by calculating the 'lodestar amount.'" *Stella v. Cnty.*, No. 1:18-cv-00002-JNP, 2023

WL 5334427, at *5 (D. Utah Aug. 18, 2023) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)). The lodestar amount "is calculated by multiplying attorney hours 'reasonably expended' by an attorney's 'reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Accordingly, the court now turns to the hourly rate and hours billed by Mr. Benzenberg and other members of Basile Law to discern whether the amounts claimed and time spent are reasonable.

    1.    <u>Hourly Rate</u>

"The party requesting the fees bears 'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)). The court "should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation." *Id.* (quoting *Case*, 157 F.3d at 1255).

As referenced above, there were seven members of Basile Law that Mr. Benzenberg maintains worked on the two motions (ECF 77 at 2–4). Mr. Benzenberg, the only partner to work on this matter, had an hourly rate ranging from $700 to $1,000 (*id.*).[4] The associates had hourly rates ranging from $300 to $700, and law clerks had hourly rates ranging from $150 to $300 (*id.*).

Mr. Benzenberg maintains that "Basile Law's customary rates are consistently at or below prevailing market rates for attorneys specializing in securities litigation" (*id.* at 4). In support of this assertion, he primarily relies on three cases from within the Second Circuit (*id.* (citing *Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998), *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017), *Inter-Am. Dev. Bank*

---

[4] The fee affidavit provided no explanation for Mr. Benzenberg's increased hourly rate (ECF 77-1).

*v. Venti S.A.*, 2016 WL 642381 (S.D.N.Y. Feb. 17, 2016))). The court does not find these cases from the Southern District of New York and the Second Circuit helpful or persuasive with regard to the matter at hand. Indeed, the Tenth Circuit has held that "[u]nless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state attorney possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)). Here, Mr. Benzenberg has failed to establish that the subject of the litigation was so unusual that only an out-of-state attorney could represent the DarkPulse Defendants. Accordingly, the court finds the application of fee rates from the local area is appropriate in this case.

Toward the end of his declaration (ECF 77 at 16), Mr. Benzenberg cited to a case originating from the District of Utah, *Securities and Exchange Commission v. Digital Licensing Inc.*, No. 2:23-cv-00482-RJS-DBP, 2024 WL 2728019 (D. Utah May 28, 2024), wherein this court approved an hourly fee rate of between $610 and $1,200. *Id.* at *10. However, in that matter, the court found that the "case involved complex and novel issues concerning the application of federal securities law to the burgeoning digital asset industry." *Id.* Moreover, the hourly rates of the attorneys in that case had been "agreed upon and paid by the . . . Defendants prior to the court's Sanctions Order." *Id.* Here, it is unclear whether the hourly rates as described in the affidavit were agreed upon and paid by the DarkPulse Defendants prior to the court's ruling on the Motion for Sanctions. Furthermore, nothing in Mr. Benzenberg's declaration supports a conclusion that this case involved complex or novel issues. While the court acknowledges that Mr. Benzenberg has maintained that the attorneys for Basile Law specialize in "securities litigation" (ECF 77 at 4), the two motions that were the subject of the court's grant of attorney's fees did not turn on, or require,

6

specialized knowledge or training. As stated in the ruling on the Motion for Sanctions, the court found it appropriate to grant the motion because "Plaintiffs' conduct was not objectively reasonable in filing an action against DarkPulse given the forum selection clauses and in asserting claims here that were duplicates of claims in the previously filed Minnesota State Actions" (ECF 76 at 7–8). Thus, given the reasons set forth in the court's earlier ruling and the general history of this litigation, the court does not find that awarding attorney's fees at an hourly rate typically reserved for matters that present "complex and novel issues" is warranted.

The court finds that the hourly rates stated in Mr. Benzenberg's declaration are excessive, and the case law he provided is not helpful in determining a reasonable hourly rate for the two motions. Relevant case law from this court suggests that the reasonable hourly rate for the work done in this matter would be approximately half of the $700 to $1000 per hour sought by Mr. Benzenberg, and it supports reducing the hourly rates of the associates and law clerks from Basile Law who also worked on this matter. *See Purple Innovation, LLC v. Responsive Surface Tech., LLC*, No. 2:20-cv-00708-RJS, 2025 WL 590309, at *7 (D. Utah Feb. 24, 2025) (finding that in awarding fees pursuant to the Lanham Act, a rate of "$195 and $585 per hour" was reasonable given the "skill, experience, and reputation" that the prevailing party's counsel brought to a "complicated case"); *Sims v. Young*, No. 1:23-cv-00053-DBB-JCB, 2023 WL 8083132, at *7 (D. Utah Nov. 21, 2023) (stating that where counsel failed to "provide adequate evidence of the prevailing market rate for civil rights attorneys of similar experience and expertise," this court relied "upon other factors, including its own knowledge," to approve an hourly rate of $450 for an attorney with nearly 50 years of experience,[5] and an hourly rate of $275 for attorneys who have

---

[5] The years of experience for this attorney was located in the plaintiff's Motion for the Award of Attorney Fees and Costs Under § 1988. *See Sims v. Young*, Case No. 1:23-cv-00053-DK-JCB, Pl.'s Mot. Fees, Dkt. No. 13.

7

practiced law for five years); *United States v. Parker-Migliorini Int'l, LLC*, No. 2:12-cv-00381-JNP-CMR, 2023 WL 1474858, at *7 (D. Utah Feb. 2, 2023) (stating that rates between $275 and $350 per hour were "reasonable rates for Salt Lake City"); *Webb v. Cnty. of Stanislaus*, No. 2:21-mc-00696-JNP-JCB, 2022 WL 1288857, at *6 (D. Utah Apr. 29, 2022) (finding "that a rate of $400.00 per hour is reasonable" given the experience and expertise of the attorney in question, and that this rate is "consistent with the high end of rates other courts in this district have found to be reasonable").

Because Mr. Benzenberg failed to provide adequate evidence of the prevailing market rate for attorneys with similar experience and expertise as himself, the court relied upon relevant case law along with other factors, including the complexity of this litigation and its own knowledge, to approve rates of $450.00 per hour for Mr. Benzenberg. What's more, the court finds it appropriate to likewise place limits on the hourly rates of the other members of Basile Law who worked on this matter. As referenced above, the hourly rates of the associates who worked on this matter ranged from $300 to $700, with no meaningful explanation provided for the differing rates. The same is true for the hourly rates of law clerks, which ranged from $150 to $300. Accordingly, for the same reasons that the court reduced Mr. Benzenberg's hourly rate, the court finds it appropriate to approve rates of $300 per hour for the work of the associates and to approve rates of $150 per hour for the work performed by law clerks. In other words, Mr. Amer, Mr. Basile, Mr. Lerner, Ms. Thornton, and Mr. Rose have approved rates of $300 per hour for the work they did as associates. And the work done by Ms. Thornton, Mr. Rose, and Ms. Thompson as law clerks is approved at a rate of $150 per hour.

    2.    <u>Hours Billed</u>

Next, the court assesses the reasonableness of the hours expended in preparing the two

motions. "To show that their counsel's claimed hours expended on a case are reasonable, courts require [the requesting party] to provide 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Stella*, 2023 WL 5334427, at *5 (quoting *Ramos*, 713 F.2d at 553). The party seeking fees must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 434).

In his declaration, Mr. Benzenberg states that Basile Law billed 105.2 hours related to the Motion to Dismiss and 94.2 hours related to the Motion for Sanctions (ECF 77 at 5–10). Based on the time logs, the breakdown of the hours spent by each individual is as follows: (1) 73.3 hours for Mr. Benzenberg, (2) 5.3 hours for Mr. Amer, (3) 74.6 hours for Mr. Lerner, (4) 5.8 hours for Mr. Basile, (5) 23 hours for Ms. Thornton,[6] (6) 13.6 hours for Mr. Rose,[7] and (7) 3.8 hours for Ms. Thompson (*id.*). Mr. Benzenberg provided two tables in his declaration, one related to each motion, with "a detailed breakdown of the work performed, the dates when the work was performed, the amount of time spent on each item of work and the name of the lawyer performing the work" (*id.*). Exhibit A, attached to the declaration, contains "a copy of Basile Law's billing records" and Mr. Benzenberg represents that "[e]xcluded or redacted" from the billing records "are entries for services that have been deemed unnecessary, duplicative or ineligible for recovery" (*id.* at 15).

Notwithstanding these billing records and time logs, Plaintiffs lodge several complaints against the hours that Basile Law reportedly billed in relation to the two motions (ECF 79). The court addresses each argument in turn.

---

[6] 22.8 of the hours attributed to Ms. Thornton were completed while she was a law clerk, and the remaining 0.2 hours were completed while she was an associate.

[7] 9.9 of the hours attributed to Mr. Rose were completed while he was a law clerk, and the remaining 3.7 hours were completed while he was an associate.

*i.     Billing miscalculations, inconsistencies, and vagueness*

Throughout their response to the request for fees, Plaintiffs take issue with miscalculations in Mr. Benzenberg's declaration, inconsistencies between the declaration and the attached Exhibit A, and assert that there are entries that are "unreviewably vague" (ECF 79). For the following reasons, the court rejects these arguments.

The court begins with Plaintiffs' assertion that the declaration contains miscalculations (*id.* at 6). In support of this argument, they point out two entries in the billing record where the recorded hours do not match the associated costs (*id.*). In response, Mr. Benzenberg admits that there were two miscalculations in his table and asserts those are "easily resolved by calculating the proper billable amount and reducing the sub-total" (ECF 80-1 at 2). The court agrees with Mr. Benzenberg on this point, that these two miscalculations do not demonstrate that the entirety of the billing records are replete with such errors. Moreover, any errors Mr. Benzenberg may have made in multiplying the hours spent by the hourly rate are moot since the court has found it appropriate to modify the hourly rates. Thus, new calculations will be made to replace the old.

With regard to inconsistencies, Plaintiffs assert that "[t]he court can place the Benzenberg Affidavit side-by-side to Exhibit A and cross-reference the dates, job description, and information and find clear discrepancies" (ECF 79 at 15). Plaintiffs however do not further elaborate on what they mean by "discrepancies." It could be that this is another reference to the two miscalculations in Mr. Benzenberg's table, which the court has already addressed. To the extent that there are further discrepancies, they are not apparent to the court, and if they are of the same nature as the other miscalculations, any such errors will be remedied by the court's new calculations with the updated hourly rates.

Turning to Plaintiffs' argument that the billing entries are "unreviewably vague" (ECF 79 at 13–14), they point out that attorneys are required to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While counsel is "not required to record in great detail how each minute of [their] time was expended," they should at least "identify the general subject matter of [their] time expenditures." *See id.* at n.12.

In support of his vagueness argument, Plaintiffs refer to Mr. Benzenberg's declaration and the attached Exhibit A to assert that "numerous entries simply state 'emails' without illuminating their subject matter or document production" and that "[s]everal other entries simply state 'telephone conferences'" (ECF 79 at 14). Candidly, the court is not entirely certain what Plaintiffs are referring to with regard to this argument. Potentially, Plaintiffs could be referencing Exhibit A, where the entries are broken down by category, and one of the various categories listed is "Email" (ECF 77-1). However, by following each line item across to the "Description" column of each entry, there is a more detailed breakdown of the content and purpose of each email. Accordingly, the billing entries Plaintiffs are seemingly referring to are not vague, and the court can ascertain the general subject matter of each time expenditure. Thus, the court finds that the billing records are sufficiently detailed, and the entries referenced will not be reduced for vagueness.

    ii.    *Entries outside the scope of the court's order*

Next, Plaintiffs argue that some of the entries in Basile Law's billing records include fees related to tasks that "are outside the scope" of the court's order (ECF 79 at 7). They also maintain that "a significant amount of the billing predates [the DarkPulse] Defendants' entry into the legal matter" (*id.*). Other tasks that Plaintiffs claim go beyond the court's award of sanctions include

"waiver of service, confirming whether the complaint was properly served (when they knew the Complaint was never served), confirming the status of service (billed again), several discussions with counsel for Standard and Transfer, researching joint defense agreement, researching lifting motion to stay, preparing motion opposition to stay, and business Edgar filings" (*id.*).

The court disagrees with Plaintiffs' contention that the court's memorandum decision granting the DarkPulse Defendants' Motion for Sanctions limited the award of fees to only work done after Mr. Benzenberg entered his appearance in this matter. First, Plaintiffs have provided no case law or other reasoning to support this position that fees can only be recovered for work done after an attorney has officially entered their appearance in a matter. Second, as was made clear in the court's ruling, the parties in this dispute "have a long history with one another," which includes two actions filed in 2021 in Minnesota state courts (ECF 76 at 2–3). Thus, it is no surprise that the attorneys with Basile Law, who represented the DarkPulse Defendants in the Minnesota cases (*see, e.g.*, ECF 80-2; ECF 80-3; ECF 80-4), were aware of this matter soon after it was filed and likely began to work on the responsive pleading shortly thereafter. This is further supported by the court docket, which shows that Mr. Benzenberg's motion for admission *pro hac vice* was granted on November 23, 2022 (ECF 32), and he filed the Motion to Dismiss that same day (ECF 33). Based on this, the court does not find it reasonable to limit the hours billed to the period of time after Mr. Benzenberg entered his appearance in this matter.

Furthermore, the court finds that the time spent by Mr. Benzenberg and his colleagues on issues related to service, correspondence with the co-defendants in this matter, and other related filings did not go beyond the scope of the court's order. As is clear in the DarkPulse Defendants' Motion to Dismiss, one of the alternative grounds for dismissal raised therein is for "failing to timely serve the DarkPulse Parties" (ECF 33 at 24–25). In the court's Memorandum Decision, fees

12

and costs were granted that were associated with the Motion to Dismiss and Motion for Sanctions (ECF 76). This grant of fees and costs was not limited to only those hours that were spent on prevailing arguments. Moreover, Plaintiffs have not persuaded the court that the other entries they take issue with were unrelated to the DarkPulse Defendants' preparation of the two motions. Because the court does not find that the billing records go beyond the scope of the court's earlier order, it declines to reduce the hours billed on this basis.

> iii.   *Duplication of services*

Next, Plaintiffs argue that the billing records in this case demonstrate that the legal team for the DarkPulse Defendants "has been overstaffed since its inception" (ECF 79 at 13). Specifically, they argue that "[m]any of the hours spent by . . . the collective professionals were unnecessary, including multiple attorneys reviewing documents, duplicating work, participation in phone calls, and so on" (*id.*). As identified by the Tenth Circuit, one of the factors to consider "in determining the reasonableness of hours expended is the potential duplication of services." *Case*, 157 F.3d at 1250 (quoting *Ramos*, 713 F.2d at 554). Accordingly, compensation should be denied for excess time, for example, in situations where several attorneys are present at a hearing but only one was necessary. *Id.*

While the court may reduce hours where duplicative services are rendered, it has also been noted that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1105 (10th Cir. 2010) (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)). Moreover, mandating that the court "identify hours reasonably expended by billing entry or litigation activity would, in many cases,

13

be practically impossible, '[t]here is no requirement . . . that district courts identify and justify each disallowed hour'" nor is there a requirement that the court "announce what hours are permitted for each legal task." *Case*, 157 F.3d at 1250 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)). Requiring courts to review all relevant documents of work product to discern whether a particular motion could have been completed in less time is oftentimes "neither practical nor desirable." *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980)). Instead, if a court has deemed there exists sufficient reason to make such an alteration, an acceptable method is to make "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number." *Id.* (quoting *Mares*, 801 F.2d at 1203).

In this matter, Plaintiffs' arguments about the duplication of work point out entries showing that Mr. Benzenberg, Mr. Lerner, and Ms. Thornton each spent time drafting the Motion to Dismiss (ECF 79 at 16). Without more, these arguments about overlapping tasks, such as drafting or researching relevant issues, do not persuade the court that this is a situation where one attorney would have sufficed to complete the project, as would necessitate the reduction of compensable hours. As noted above, it is not per se unreasonable for a client to have multiple attorneys who may all be compensated so long as they are not "unreasonably doing the same work," *see Anchondo*, 616 F.3d at 1105, and the court does not find that the billing records submitted by Mr. Benzenberg demonstrate unreasonable duplicative work with regard to the Motion to Dismiss or Motion for Sanctions.

Plaintiffs also protest the general use of seven legal professionals from Basile Law along with an additional attorney serving as local counsel, asserting that "[t]he court is within its discretion to wonder if any other Defendant would be willing to pay for teams of 8 attorneys" (ECF 79 at 13). However, as Mr. Benzenberg points out, it is "entirely proper and commonplace,"

14

for a firm to assign tasks to junior attorneys, "who billed at lower rates," to assist with researching and drafting, as this prevents incurring additional fees "that would have been charged if senior attorneys . . . had performed the exact same tasks" (ECF 80-1 at 3). The court further notes that Mr. Benzenberg's declaration states that Mr. Lerner and Ms. Thornton ended their employment with Basile Law in June 2023 (ECF 77 at 2–3), and a review of the billing records shows that Mr. Basile and Mr. Amer did not do any work on this matter until October and November of 2023 (ECF 77-1 at 2). Moreover, Ms. Thompson, a law clerk with the firm, only worked on this matter over the course of two days in September 2024 (*id.* at 4). Given the history of this case and a review of the billing records, the court does not find it suspect that there were seven legal professionals from Basile Law working on the two motions at issue during the pendency of this litigation.

For those reasons, the court denies Plaintiffs' request to reduce the compensable hours for duplication of services because it finds that there is sufficient justification for Basile Law to bill the time for seven legal professionals working on this matter.

    *iv.*    *Block billing*

Courts have discretion to reduce compensable hours where "block billing indicates an unreasonable claim." *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009). "So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took. Use of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive." *Id.*

Plaintiffs maintain that the declaration put forth by Mr. Benzenberg contains "several entries that would qualify as block billing" (ECF 79 at 15). It is true that Mr. Benzenberg provided

a table in his declaration that groups several entries together, indicating that the work claimed was done over multiple days (ECF 77 at 5–14). But the court can easily cross-reference these entries with the more detailed billing record provided by Mr. Benzenberg in Exhibit A to his declaration (ECF 77-1). Considering the fact that Mr. Benzenberg provided a detailed record of the tasks performed by each member of Basile Law, and that each task indicates the date and length of time spent on that task, the court does not find that there is evidence of excessive block billing in this matter that would justify reducing the requested hours.

Accordingly, the court rejects this and every other argument raised by Plaintiffs with regard to the reduction of hours billed. The court finds it was reasonable for Mr. Benzenberg and his colleagues to have spent 105.2 hours related to the Motion to Dismiss and 94.2 hours related to the Motion for Sanctions (ECF 77 at 5–10).

### 3. Lodestar Amount

Now that the court has determined the reasonableness of the hourly rate and hours billed by the members of Basile Law, the lodestar amount can be calculated. Based on the rates and hours that the court found to be reasonable, the total amount of fees attributed to the legal professionals at Basile Law for the two motions equals $65,340.[8]

Furthermore, according to Mr. Benzenberg, Basile Law incurred $250 in costs for the *pro hac vice* admission of Mr. Benzenberg in this matter. Plaintiffs did not challenge the reasonableness of this amount. Based on the filings before it, the court finds that $250 in costs is

---

[8] The breakdown of the fees is as follows: (1) Mr. Benzenberg's hourly rate of $450 for 73.3 hours equals $32,985, (2) Mr. Amer's hourly rate of $300 for 5.3 hours equals $1590, (3) Mr. Lerner's hourly rate of $300 for 74.6 hours equals $22,380, (4) Mr. Basile's hourly rate of $300 for 5.8 hours equals $1,740, (5) Ms. Thornton's hourly rate as a clerk of $150 for 22.8 hours plus her hourly rate as an associate for $300 for 0.2 hours equals $3,480, (6) Mr. Rose's hourly rate as a clerk of $150 for 9.9 hours plus his hourly rate as an associate for $300 for 3.7 hours equals $2,595, and (7) Ms. Thompson's hourly rate of $150 for 3.8 hours equals $570.

reasonable, bringing the total amount of fees and costs incurred by the DarkPulse Defendants with regard to Basile Law's representation to $65,840.

**B.     Reasonableness of Mr. Higley's Proposed Fees**

In addition to Mr. Benzenberg's declaration, Mr. Higley, serving as local counsel for the DarkPulse Defendants, also submitted a declaration (ECF 78). Therein, Mr. Higley states that in serving as local counsel for the DarkPulse Defendants, he charged a "flat-rate, one-time fee of $5,000.00" (*id.* at 2). Mr. Higley provided an invoice related to his representation of the DarkPulse Defendants (*id.* at 4). He further maintains that he "performed considerable work on this matter since its inception" which included "reviewing and editing the Safe Harbor Correspondence communicated on behalf of the DarkPulse Defendants to Plaintiffs, reviewing and editing the Motion to Dismiss, reviewing and editing the Motion for Sanctions and appearing for oral arguments on the Motion for Sanctions" (*id.* at 2–3).

Based on their response, it is unclear whether Plaintiffs object to the flat fee rate Mr. Higley charged in this matter (ECF 79 at 20). The vast majority of Plaintiffs' response is concerned with the fees requested by Mr. Benzenberg and his firm. Indeed, with regard to Mr. Higley's request, there are only four sentences in Plaintiffs' response, concluding with: "The request is reasonably scrutinized" (*id.*). The court is unable to decipher the reasons or method by which Plaintiffs presumably believe this fee request should be reduced.

Nevertheless, considering the filings before the court, the history of this litigation, and the representations of Mr. Higley, the court finds that his request of $5,000 for his representation of the DarkPulse Defendants is reasonable.

### C. Minimum Required to Deter Misconduct

Beyond the reasonableness of the proposed fees, there are three other factors for the court to consider when imposing fees as a sanction under Rule 11, including the minimum amount required to deter misconduct. *See King*, 899 F.3d at 1155. "[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." *Id.* at 1156 (quoting *White*, 908 F.2d at 684). Thus, fees that would otherwise be considered "reasonable" are excessive in this context if they are found to exceed the "amount reasonably necessary to deter the wrongdoer." *Id.*

Here, the court found it appropriate to reduce Basile Law's requested fee amount of $124,961.00 (ECF 77 at 10), down to $65,840, nearly half of the requested amount. The court finds that the total amount requested by Basile Law was excessive and unnecessary to deter future misconduct. While Plaintiffs argued that the amount requested was excessive and unnecessarily inflated to deter misconduct, they did not present further argument specifically on this point.

Based on the reasons set forth in the court's Memorandum Decision ruling on the Motion for Sanctions (ECF 76), the court finds that $65,840 in attorney's fees and costs to Basile Law and $5,000 in attorney's fees to Mr. Higley are the minimum amounts necessary to deter misconduct.

### D. Ability to Pay

The next factor to consider is "the offender's ability to pay." *See King*, 899 F.3d at 1155. "[B]ecause the purpose of monetary sanctions is to deter attorney and litigant misconduct," courts must consider "the offender's ability to pay." *Id.* at 1156 (quoting *White*, 908 F.2d at 685). "The sanctioned party bears the burden to prove its inability to pay an otherwise-appropriate sanction." *Id.*

Plaintiffs' response to Mr. Benzenberg's and Mr. Higley's declarations presents no argument on their inability to pay any sanctions imposed against them (ECF 79). Their sur-reply likewise presents no argument on their ability to pay (ECF 83). In cases such as these, courts are "unwilling to speculate as to a party's ability to pay, or lack thereof, without any information from the sanctioned party." *See King*, 899 F.3d at 1156. Because the court has no information from which it can discern Plaintiffs' ability to pay, it declines to weigh this factor in their favor.

### E. "Other Factors"

Finally, when considering sanctions under Rule 11, "the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *King*, 899 F.3d at 1156 (quoting *White*, 908 F.2d at 685).

Here, a more fulsome description of the factors that the court finds relevant is contained in the court's Memorandum Decision (ECF 76), wherein the DarkPulse Defendants' Motion for Sanctions was granted. In sum, the court found that "Plaintiffs' conduct was not objectively reasonable in filing an action against DarkPulse" and the filing of the Complaint in this matter was not "warranted by existing law" (*id.* at 7–8). The court also noted "the attempts of Plaintiffs (albeit not as timely as they could have been) to dismiss this matter," and for that reason the court only granted the motion in part, limiting the award to only fees and costs incurred related to the Motion to Dismiss and Motion for Sanctions (*id.* at 11–12).

Given those reasons set forth in the Memorandum Decision, particularly the unreasonableness of Plaintiffs' conduct, the court finds that an award of $65,840 to Basile Law for attorney's fees and costs, and an award of $5,000 to Mr. Higley for attorney's fees is appropriate.

## IV.  CONCLUSION & ORDER

For the reasons stated herein, the court hereby GRANTS IN PART and DENIES IN PART Mr. Benzenberg's request for fees on behalf of Basile Law (ECF 77), and GRANTS Mr. Higley's request for fees (ECF 78). The court awards the DarkPulse Defendants $65,840 in attorney's fees and costs related to the representations of Basile Law and $5,000 related to Mr. Brian Higley's representations for a total award of $70,840.

IT IS SO ORDERED.

DATED this 15 July 2025.

*[signature]*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah